We'll hear the first case on calendar, which is Abbas v. Martin. Good morning. Good morning. Thank you, and may it please the Court. In Hanex v. GMI, this Court stated that no contract is necessary for a tortious interference claim with business relations, and it was also stated in Scuti Enterprises v. Park Place Entertainment that a plaintiff can recover for tortious interference against a defendant who tortiously interferes with a business relation that is customary or continuing business. For a tort, it has to be malicious, and to be malicious, it means in part that it doesn't serve any legitimate purpose, business or otherwise, of the person who is alleged to have interfered. Now, why wasn't it perfectly legitimate concern to tell the law firm that they may be on the hook for $75,000? Okay, thank you, Your Honor. May I proceed? Please. That's a question, and usually this is an answer. Well, first of all, I would like to straighten out some facts which they misstated in their brief and also which the district court got wrong. They stated that I was an employee or I had an employment relationship with Handler Thayer. That's not true. I had an off-council relation and a business relation. That's one aspect. The district court said I was associated with Handler Thayer. That's not correct. I was never associated. I was never a partner. I had an off-council business relation. So Handler Thayer had nothing to do with the sanctions order which this court had entered against me on July 16th. You used letterhead, right? I mean, you're a lawyer, right? You used letterhead, and it was Handler Thayer letterhead, and it said you were of counsel. Yes, correct, Your Honor. That's an affiliation. A counsel is an arrangement that will often vary from firm to firm, correct? But you were doing business under their auspices. Your Honor, I would just like to clarify that point. When I started the case for the two bank checks, Midamine v. the KBC, and ORC was representing the bank, that was in 2012. I had no affiliation with Handler Thayer at that time. In 2014, around April, is when I developed the off-council relationship or the business relationship with Handler Thayer. So ORC knew perfectly well from the beginning that I was pro se in the Midamine case, and I was pro hack vici for Midamine Espera Limited. They knew that Handler Thayer had never filed an appearance in the Second Circuit. What do you mean you were pro hack vici? I was representing this Illinois corporation, Midamine Espera Limited, and I was representing myself for a stop payment of bank checks against KBC, which ORC was representing. You were not admitted to the court? Is that it? No, at that time I was not admitted. I was admitted pro hack vici to the court. So they knew from the beginning that Handler Thayer had no involvement with the underlying case against the KBC. And also when this court, Your Honor, entered the July 16 order, it said the appellants shall pay reasonable fees. And the only two appellants in that case was myself and Midamine Espera Limited. This court did not say to ORC, you can go collect fees from a law firm in Chicago called Handler Thayer. And they had no legal basis, even if I had this off-counsel relationship, they had no legal basis to threaten or harass Handler Thayer with three consecutive emails, which had a cumulative effect when Handler, Tom Handler and Steve Thayer, when they saw those emails- Well, Handler and Thayer, of course, they wanted to distance themselves from any potential lawsuit which ORC was threatening. And this order, only the ink was not even dry on this order. They had not even submitted any invoices whatsoever, which goes to the malice. As soon as the court entered that order, immediately, like a bullet, they were shooting these emails to Tom Handler, okay, saying if Mr. Abbas doesn't pay, we're going to look to you to pay. Either way, have you paid? That's under appeal, Your Honor, because for those 75,000, I appealed it because they submitted a totally redacted invoice, all blacked out. I couldn't read it, even though this court has said I could challenge it. The district court didn't allow me a hearing, didn't allow me to see the unredacted bills. Time records often contain attorney-client privilege material. Right, and also they overbilled it. You're never going to see what's attorney-client privilege. Well, I had the right to challenge it, according to this court. They overstaffed it with five lawyers, which is pretty fancy footwork, but it ain't the NBA. I mean, this is not a basketball court. This is a court of law. They needed five lawyers, and they submitted 200 hours when that motion could have been responded to in a few hours. So I appealed that judgment for the $75,000, Your Honor. You're way beyond me. I don't understand what's wrong with Martin sending Handler an email letting his firm know that they may be on the hook for a substantial amount of money. Well, the reason for that is— What's wrong with that? What's wrong with that is because they misused an order from the Second Circuit. The Second Circuit said that Midamin Espera Limited, which is the Illinois Corp., and myself shall pay reasonable fees. Reasonable. So Handler and Thayer had nothing to do with the court. You maintained this litigation as a Handler lawyer. You used their letterhead, didn't you? I used their letterhead just in 2014 when I developed the relationship with them. So for the prior two years— So while the conduct that was the subject of the sanctions was taking place, you were using Handler Thayer letterhead, weren't you? The conduct of the—no, I wasn't. That was previously. When the sanctions order was entered, at that time I had the relationship, but before that I did not have the relationship. Didn't you list your Handler Thayer email address in the notice of appearance? Yes. When I received the email from Handler Thayer and they put my bio on their website and they said, okay, you are of counsel with our law firm, and it was a very valuable relationship for me. It took time to develop it and to establish it, and I worked on developing these tax clients for them overseas and for us to collaborate together. So I did put their email. Now, I can understand maybe for someone who was not in the case, maybe it might appear that I was litigating this case on behalf of Handler Thayer, but the fact is that they knew from 2012— In the correspondence that you wrote in the course of these proceedings, did you use any letterhead other than Handler Thayer? No, because I did not— I'm sorry, was that a no? No, I did not have any affiliation with Handler Thayer before that, so I did not use it. When I received the email from them and the letterhead, then I used it, but again— When did you start using the letterhead? This was in April 2014, I believe. May I proceed, Your Honor? Sure. Okay, I would like to go through the elements of the tortious interference claim with business relation. We do—I mean, we have briefing. Okay, so the point is that— Why don't you concentrate on the one you thought was not established? That might be a productive— Okay, with the element, the third element, which is the malice element, I did allege that it was motivated by malice because it was revenge for the motion to disqualify. Now, one of the underlying things that I noticed in the district court's opinion is that Judge Sullivan did not want to deem any of my allegations as true, which normally, you know, under the rules or under the failure to state of claim, normally the allegations are supposed to be deemed true. The top three facts you think indicate malice. One, two, three. Okay, the first fact— The most important one is what? The first fact is they misused an order of the Second Circuit. They went around waiving that order of the Second Circuit, which did not apply to Handler Thayer. Number two, they knew they could not legally collect a penny from Handler Thayer because it was an off-counsel relationship. And number three, they sent emails directly to Handler Thayer, threatening them with sanctions and fees, and then when I asked them, please stop harassing Handler Thayer, they sent another email saying, we'll decide how to collect. So now Handler Thayer are feeling, okay, we might be subject to collection proceedings. And then the last email, which had the cumulative effect, the last email said, well, we see your name is linked to the website and so on, and your bio is linked. So now Handler Thayer gets three emails, one threatening sanctions and fees, one threatening collection proceedings, and one saying that I'm linked to their website. Okay, so they decided to terminate the relationship the next day. And also, I don't think that malice in terms of what the restatement second of torts said, there are four factual scenarios, and unfair economic pressure is one of the improper means is also deemed that the element is met. The sanctions order was issued by this court. Yes, Your Honor. And that was reduced to a sum, correct? When the sanctions order was issued by this court. Who is administering the sanctions order? This court sent it back down to Judge Sullivan to determine what's reasonable and also allowed me the right to challenge what's reasonable. 75,000 came up. Yes. What's the status of that? That's being appealed, Your Honor. That's under appeal. Any idea when that's scheduled to be heard? I'm not sure, Your Honor. Did they require you to post a bond? No, they did not require me to post a bond, no. You reserved a minute's rebuttal. We'll hear the other side. Okay, thank you. Good morning. Good morning. May it please the court, Kelly Daly on behalf of appellees Richard Martin and Orrick Harrington in Sutcliffe. As Your Honors know, the district court dismissed Mr. Abbas's complaint, holding that the complaint does not even come close to satisfying the standard for tortious interference claim. But rather, it seems designed, like many of plaintiffs' previous motions, to prolong litigation to continue to harass Orrick as a result of the firm's representation of KVC. Based on this, the district court ruled that the claim was vexatious. It was clearly meritless. And also, based on Mr. Abbas's long record of such litigation, the court entered a filing injunction against him. They ruled that this claim warranted Rule 11 monetary sanctions, but they wouldn't be entered here. Respectfully, we posit that the district court's decision was correct, and we would ask that you affirm it. I would like to briefly address a few issues that Mr. Abbas and the court just raised in his arguments. Specifically, the court— What basis did you think that Handler might be on the hook for these fees? I believe Mr. Martin had a reasonable basis based on Mr. Abbas's use of the Handler-Thayer email address, the fact that the signature block in his email was a Handler-Thayer signature block that indicated an off-counselor relationship. It also included a link to the Handler-Thayer bio. He had entered his notice of appearance with the Handler-Thayer email address, as the court has already noted. So there were—in the use of the Handler-Thayer letterhead, there were a number of representations that made it appear that he was operating on behalf of Handler-Thayer at the time, or within his capacity as off-counsel at Handler-Thayer at the time that the sanctions order was entered. There were other email addresses, if I remember the record correctly, in addition to Handler-Thayer's email address on the notice of appearance, correct? That's correct. I believe he also uses a Hotmail address. And Handler-Thayer itself did not notice an appearance in the litigation. So Handler-Thayer did not—no, he noticed his appearance on behalf of himself using his Handler-Thayer email address. So I believe that Mr. Martin had a reasonable basis to conclude that he was acting in his capacity on behalf of Handler-Thayer. In footnote 6 of our brief, we cite Illinois law under which law firms and employers of attorneys can be held responsible for sanctions issued by the court under a theory of vicarious liability responding at superior. So there's certainly a credible legal basis for asserting that Handler-Thayer could be on the hook for these sanctions. But I think it's also important to remember that under the third element of a tortious interference claim, the court in Carvel says there's two ways to prove that third element. One of those ways is a crime or independent tort. And I don't think that anybody has suggested that the conduct here is a crime or an independent tort. And the second way is to show that it was done for an exclusively wrongful purpose. And the key word there is exclusively. And if you look at the case law interpreting that third element, you'll see that there are plenty of instances in which an allegation that contact was made for some nefarious purpose is found not to be sufficient if there is a credible independent economic reason. So if your firm sent these communications to advance its prospects of collecting the $75,000, it wouldn't be malicious even if it gave you pleasure to get him fired? That is what the law says, Your Honor. And this court held in Catskill Development that the third element was not satisfied where there was a legitimate business interest that was promoted by the contact, even if the contact otherwise asserted some kind of pressure. And that's the same thing if you look at the Kazowitz-Benson case, which was cited by the district court. They said that the third element was not satisfied where informing clients that an attorney had been terminated for sexual harassment advanced Kazowitz-Benson and its clients' own interests. So all you need is an independent economic reason. And as the district court found and is clear from the face of the e-mail, which is in the appendix in this case, supplemental appendix 34 to 38, the e-mail itself seeks to collect money that was owed to ORIC based on a credible belief that Handler-Thayer could be on the hook for that money. And that suffices under the third element to defeat the claim for tortious interference. The last thing I'd like to point out, the court below decided that there was no evidence of causation, and I think that the causation element is also critical here. Mr. Abbas has alleged without support that the contact caused his termination. And I think what's clear from the face of the e-mail and from the subsequent events is that, you know, to the extent that Handler-Thayer terminated his relationship with Mr. Abbas because he was sanctioned or because he was conducting his personal legal affairs under the Handler-Thayer name without their authorization, that the fact that they were informed of that conduct by contact from Mr. Martin and ORIC does not satisfy the causation prong of the tort of tortious interference. There are a number of cases, especially the Kirsch case and the Snyder v. Sony case. Well, if they didn't know about it but for the information supplied by your firm, why wouldn't there be causation? Well, I think the standard is not exclusively but for. I think there has to be the proximate causation. There has to be some kind of reasonable relationship. And in the Kirsch case, the court said that if statements create pressure, quote, merely as a result of their persuasive effect on third parties, who in the end independently decided not to enter or continue various subsequent agreements, that it is not proximate causation in that situation. So if the underlying factual situation is what causes the ultimate consequence, then informing somebody of a factually true statement that has that independent effect does not satisfy proximate causation for these purposes. Finally, Your Honors, I would just like to say, as you're well aware, you've mentioned the other cases going on, the pending fee dispute. This is the second time that we have appeared before this Court in oral arguments in a case in which Mr. Abbas is the plaintiff and appellant. There's another appeal that's currently pending. There's a case pending in the Northern District of Illinois. There was a case dismissed from the New York Supreme Court. As the Court is well aware, he's been sanctioned. There's an injunction against him. There's been a fee award. He is not deterred. And so to the extent that this Court has any equitable authority to help terminate this litigation, we would ask that you exercise it in this case. Thank you. You reserve one minute's rebuttal. Your Honor, let me ask you this. When you got hit with this sanction, did you tell your colleagues at the handler firm? No, I was not affiliated with them. No, I was. I did not tell them that I was hit with sanctions because it was not relevant to them. The answer is no. The answer is no. With respect to the third element. If you lose the appeal on the sanctions, are you going to pay the $75,000? Well, first of all, Your Honor, with respect to the $75,000, I already informed the Second Circuit that I don't have $75,000 and that it was excessive and it was overbilled and overstaffed. So I won't answer that until I know what happens in that case, Your Honor. I can't answer that. If you don't have it, you're not going to pay it, whether it's overbilled or underbilled, right? Well, I'll just wait and see what the court says, Your Honor. Because I asked for them to review the issue that sanctions is for purpose of deterrence. That's a great deal of work and it gets reduced to $45,000. You're not going to pay that either. Your Honor, well. Because you don't have it. Well, I don't have it. That's true. And also, Judge Sullivan did not reduce one hour from all the hours that they submitted. I didn't get a hearing. I didn't get the unredacted statements. And he didn't reduce a single hour from all the hours that they submitted. But sometimes, bill the time that they work. Yes, Your Honor. But when it's overstaffed, the Supreme Court said in Hensley that it must be reduced. And there's a lot of case law from the Second Circuit that says that overbilled has to be reduced.  Well, reserved division. Good night.